MARY H. MOORE *vs.* WILLIAM H. MOORE.

*Bail—how reduced. New trial. Adverse possession.*

The court will not set aside a verdict establishing a title by disseizin when there is evidence on both sides, and no exceptions are taken to the rulings of the presiding justice, and there is nothing indicating misconduct or gross partiality on the part of the jury.

The court will not quash a *capias* writ, on which a defendant has been held to bail, on the ground that the *ad damnum* is evidently excessive.

Conceding a right to betterments is an admission that the possession, during the time in which this right was acquired, was adverse.

ON EXCEPTIONS AND MOTION FOR NEW TRIAL.

TRESPASS *quare clausum* for breaking and entering the plaintiff's close in Ellsworth, particularly described, "known as the Alvin Starkee premises by being occupied by him during many years, and same conveyed by him to said Mary H. Moore by deed dated December 15, 1869 ; " and, being so entered, for breaking the bars, plowing up the ground, etc., etc., "contrary to the form of the statute and to the damage of the plaintiff in the sum of thirty-six dollars." The officer was by his precept commanded to attach property to the amount of three hundred dollars and for want thereof to take the body of the defendant, who was arrested

and gave bail in the sum required.   The statement of damage above-quoted immediately preceded the *ad damnum* of the writ, which was filled up with three hundred dollars.   Immediately after the writ was read to the jury the defendant's counsel moved that it be quashed because excessive bail had been required and taken upon it ; this motion was overruled and the defendant excepted.

The plaintiff claimed the premises by the above-mentioned deed from Alvin Starkee, who asserted ownership by more than thirty years' possession under a quit-claim deed from Elias Inman, which had been lost, and the defendant justified his acts by title in himself, derived from Seth Tisdale, by warrantee deed dated August 30, 1871, and also put into the case a deed of warranty from Leonard Jarvis to Seth Tisdale, given July 10, 1849, in which there was a reservation " to the settlers on the lots whatever rights they may have by way of betterments."   The fact of Starkee's occupation, and the erection of buildings on the lot by him, was not denied ; but there was a great deal of evidence tending to show that his occupancy was permissive, and not adverse ; and it was contended that his own testimony in the case admitted this, and that his declarations to others, while living upon the premises, established the fact ; but he testified to his claim to own it after occupying for twenty-one years, and the jury found a verdict for the plaintiff, which the defendant moved to set aside as against the law and the evidence.

*Hale & Emery*, for defendant, cited *Kinsell* v. *Daggett*, 11 Maine, 309 ; *Arnold* v. *Stevens*, 24 Pick. 108 ; *Chadbourne* v. *Swan*, 40 Maine, 260.

*George S. Peters*, for plaintiff.

APPLETON, C. J.   This is an action of trespass *quare clausum fregit*.   The defendant claims title in himself and denies that of the plaintiff.

The motion to quash the writ because excessive bail was de-

manded was properly overruled. Bail had been given. If it had not been, the defendant's remedy was to apply to the court for its reduction. R. S. of 1871, c. 99, § 9.

On the trial of the cause a verdict was found for the plaintiff. No report is made of, or exceptions taken to, the charge of the presiding justice. We may assume, therefore, that the law as applicable to the case was correctly given to the jury and that, at any rate, the defendant had no cause of complaint.

It appears that prior to 1833 one Inman lived on the lot in controversy, having built a log house thereon. In June of that year he conveyed by quit-claim deed the lot to Alvin Starkee, who entered into possession of and occupied the land until Dec. 15, 1869, when he conveyed the same by deed of quit-claim to the plaintiff, who entered into possession.

Alvin Starkee testifies that he did not know who owned the lot; that he did not know whether his deed was good for anything or not; that he occupied the lot to the time of his conveyance to the plaintiff, claiming and occupying it as his own and erecting an house and barn and building fences thereon; that he calculated he owned it; that he had lived on it long enough to hold it by possession; that he never had any lease of it; that he never applied to any one for writings in reference to purchasing it and that he was never disturbed in his occupation of it by any one. Other witnesses testify to Starkee's continued occupation of the premises in controversy for thirty-five years or more.

Here, then, was continuous occupation for over thirty-five years. The occupation by the witness was as his own, claiming title thereto. Such occupation is necessarily adverse to all others. It was open and notorious. During this period the tenant was never disturbed in his occupation by any one. Here, then, if the plaintiff's testimony was to be believed, there was open, notorious, exclusive, and adverse possession by one claiming title for over thirty years to the premises in dispute. It resembled in all its essential characteristics that of every farmer in the community. It is clearly within R. S. of 1857, c. 105, § 10; *Eaton* v. *Jacobs*, 52 Maine, 455.

· Betterment rights are acquired by adverse possession, which continued for twenty years, ripens into a perfect title by disseisin. The deed from Jarvis to Tisdale, dated July 10, 1849, under which the tenant claims title, assumes the existence of a right to betterments, and specially reserves to the settlers "whatever rights they may have by way of betterments;" thus admitting that betterment rights might then have been acquired, and that the possession was adverse and not under the title of the grantor. *Treat* v. *Strickland,* 23 Maine, 192.

It is true there is much evidence contradictory to that offered by the plaintiff, evidence upon which the jury might, if uncontradicted, or believed, well have rendered a verdict against him. But the force and effect of the testimony, the degree of credit to be given to the witnesses on the one side or the other, was submitted to a jury under proper instructions, and no sufficient reason is shown for disturbing the verdict.

*Exceptions and motion overruled.*

CUTTING, DICKERSON, BARROWS, and PETERS, JJ., concurred.